2025 IL App (1st) 231705

Nos. 1-23-1705, 1-23-1706 (cons.)

Opinion filed March 14, 2025

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DENA LOCKWOOD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Counterplaintiff-appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2010 CH 6667 |
| | ) | |
| PROFESSIONAL NEUROLOGICAL | ) | Honorable |
| SERVICES, LTD., DR. MALCOLM HERZOG, | ) | Pamela McLean Meyerson, |
| DR. MATTHEW GAROUFALIS, DR. JERZY | ) | Judge, presiding. |
| SZYMANSKI, and ADVANCED | ) | |
| NEUROLOGICAL DIAGNOSTICS, LLC, | ) | |
| | ) | |
| Counterdefendant-appellants. | ) | |
| | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Oden Johnson and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Drs. Malcolm Herzog, Matthew Garoufalis, and Jerzy Szymanski ("the doctors") appeal from a series of orders entered against them in supplementary proceedings in favor of their former employee Dena Lockwood. See 735 ILCS 5/2-1402 (West 2016). The doctors owned a neurological diagnostics company called Professional Neurological Services, Ltd. Lockwood prevailed against Professional Neurological Services before the Chicago Commission on Human Relations on an employment discrimination claim. Professional Neurological Services sought administrative review of the Commission's award, which the circuit court and this court affirmed.

*Professional Neurological Services, Ltd. v. City of Chicago ex rel. Comm'n of Human Relations*, 2014 IL App (1st) 111476-U. Then, in Lockwood's supplementary proceedings against Professional Neurological Services to enforce the judgment, the circuit court allowed Lockwood to pierce the corporate veil and hold the doctors personally liable for the judgment against Professional Neurological Services.

¶ 2    The doctors raise the following three issues: (1) did the circuit court err in permitting Lockwood to bring an action to pierce the corporate veil in supplementary proceedings, (2) did the circuit court err in awarding Lockwood attorney fees incurred in enforcing her judgment, and (3) did the circuit court act without jurisdiction in reviving the underlying judgment where Lockwood improperly served a petition to revive her judgment on the judgment debtor, Professional Neurological Services. Consistent with longstanding Illinois practice, we conclude that a judgment debtor may not bring an action to pierce the corporate veil within supplementary proceedings. We also conclude that a plaintiff may recover her attorney fees in an award from the Chicago Commission on Human Relations and that defects in service of the petition for revival in this case did not deprive the circuit court of jurisdiction. Nevertheless, for the reasons below, we vacate the judgment and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4    In January 2009, the City of Chicago's Commission on Human Relations determined that Lockwood had been fired in violation of the Chicago Human Rights Ordinance. The Commission ordered her employer, Professional Neurological Services, to pay Lockwood $113,601.25 in compensatory damages, $100,000 in punitive damages, and $87,655.61 in attorney fees and costs. Both the circuit court and this court upheld the Commission's award.

¶ 5 In 2011, Lockwood began supplementary proceedings to enforce her judgment against Professional Neurological Services by serving a citation to discover assets on its registered agent. The parties litigated the citation for years until, having failed to recover any assets from Professional Neurological Services, Lockwood filed an amended complaint within the supplementary proceedings to pierce the corporate veil. After a bench trial, the circuit court held that piercing was warranted and entered an order holding the doctors liable for the underlying judgment. The circuit court initially did not award Lockwood additional attorney fees. In response to Lockwood's motion to reconsider and following briefing on the amount of fees warranted, the circuit court granted Lockwood attorney fees and costs totaling $500,635.28.

¶ 6 The doctors then pursued a series of unsuccessful motions to amend and to vacate previous orders, which the circuit court denied on August 23, 2023. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017). One counterdefendant, Dr. Herzog, brought a separate appeal (No. 1-23-1705). We granted Drs. Garoufalis and Szymanski's motion to consolidate Dr. Herzog's appeal with theirs (No. 1-23-1706), and the doctors filed joint briefs.

¶ 7 II. ANALYSIS

¶ 8 A. Piercing the Corporate Veil in Supplementary Proceedings

¶ 9 The doctors argue that the circuit court lacked jurisdiction to pierce the corporate veil in a supplementary proceeding and hold them liable for Lockwood's underlying judgment against Professional Neurological Services. Lockwood contends that the supplementary proceedings statute allows for an action to pierce the corporate veil, or, alternatively, that the improper transfer of assets to the doctors from Professional Neurological Services supports the personal judgment

entered against them. The doctors objected to Lockwood's veil-piercing claim as beyond the scope of the supplementary proceedings statute, but the circuit court overruled that objection.

¶ 10    Circuit courts are courts of general jurisdiction, and with rare exception, "the jurisdiction of the circuit court flows from the constitution," not the legislature. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002); *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 532 (2001) ("[J]urisdiction is not affected by an incorrect judgment."). As a consequence, appellant's contention that the circuit court lacked *jurisdiction* to adjudicate a veil-piercing claim within a supplementary proceeding is misguided. Similarly, the organization of the circuit court of Cook County with its specialized divisions is not jurisdictional but a matter of administrative convenience. Our cases have not construed the limitation on veil-piercing claims as jurisdictional, rather the question is whether such an action is authorized by statute. Is it *ultra vires*? We review statutory interpretation issues *de novo. Rainey v. Retirement Board of Policemen's Annuity & Benefit Fund*, 2024 IL App (1st) 231993, ¶ 54.

¶ 11    The statute authorizing supplementary proceedings "provides a mechanism by which a judgment creditor may initiate supplementary proceedings to discover the assets of a judgment debtor or third party and apply those assets to satisfy the judgment." *Schak v. Blom*, 334 Ill. App. 3d 129, 132-33; see also Ill. S. Ct. R. 277 (eff. Jan. 4, 2013). The supplementary proceedings statute grants the court "broad powers to compel the application of discovered assets or income in order to satisfy a judgment," and we construe it liberally. *Dowling v. Chicago Options Associates, Inc.*, 365 Ill. App. 3d 341, 347 (2006). At the same time, the legislature's purpose in enacting the statute was "to provide *** an efficient and expeditious procedure" for enforcing judgments. *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 314 (1989).

¶ 12    Illinois courts have previously ruled that a judgment creditor may not bring an action to pierce the corporate veil within supplementary proceedings and must instead commence a separate action. *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 624 (1994); *Lange v. Misch*, 232 Ill. App. 3d 1077, 1081-82 (1992); *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 415 (2003); but see *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.*, 64 Ill. App. 3d 19, 32 (1978), *abrogated on other grounds by Harris v. Harris*, 196 Ill. App. 3d 815 (1990). In *Pyshos*, this court explained that the supplementary proceedings statute operates to recover a judgment debtor's assets and can only involve third parties to the extent they possess assets of the judgment debtor. *Pyshos*, 258 Ill. App. 3d at 623. Therefore "the only relevant inquiries in supplementary proceedings are (1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Id.*

¶ 13    Because the inquiry into whether to pierce the corporate veil is "much broader" and requires allegations regarding the legitimacy of the corporate form that bear no relation to a third party's possession of a judgment debtor's assets, *Pyshos* held that an action to pierce exceeds the scope of supplementary proceedings. *Id.* at 623-24. Further, when the circuit court enters the underlying judgment, the judgment creditor's original claim against the corporate defendant "merges with the judgment," and the judgment becomes "a new and distinct obligation of the corporation which differs in nature and essence from the original claim." *Id.* at 624. The judgment creditor must either forge ahead in the same action to uncover and recover specific assets of the judgment debtor or file a new action to pierce the debtor's corporate veil and impose personal liability on corporate officers. *Id.* at 625; *Lange*, 232 Ill. App. 3d at 1081-82 (reversing piercing of

the corporate veil within supplementary proceedings on appeal and directing the party seeking to pierce the corporate veil to file a separate action).

¶ 14    The rule announced in *Pyshos* has consistently been applied in the intervening decades. See, *e.g.*, *Andersen L. LLC v. 3 Build Construction, LLC*, 2019 IL App (1st) 181575-U, ¶ 88 (rejecting attempt to pierce the corporate veil in supplementary proceedings, citing *Pyshos*); *Star Insurance Co. v. Risk Marketing Group Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (rejecting attempt to consolidate a piercing action and a supplementary proceeding, citing *Pyshos* and explaining that "[i]n essence, the two proceedings seek different things and seeking to consolidate them into one proceeding is improper"). There is nothing inherently illogical about such a rule, and other jurisdictions reach the same result. *Green v. Ziegelman*, 282 Mich. App. 292, 303 (2009); *C-Staff, Inc. v. Liberty Mutual Insurance Co.*, 275 Ga. 624, 624 (2002); see also Guy Macarol, *Veil Piercing and Fraudulent Transfer Avoidance in Supplemental Proceedings: How Expanding Statutory Remedies and Enforcement Jurisdiction Can Promote Judicial Economy and Facilitate Judgment Collection*, 50 J. Marshall L. Rev. 279 (2017).

¶ 15    The language of the statute does not express any clear legislative intent to allow a judgment creditor to maintain an action to pierce the corporate veil. Our cases are consistent with that language. Section 2-1402 empowers the circuit court to act by "appropriate order or judgment" once it has discovered non-exempt assets of the judgment debtor in the possession of the debtor or a third party. 735 ILCS 5/2-1402(c)(1)-(6). Subsection (c)(3) allows the circuit court to order a third party to turn over qualifying assets to a judgment creditor:

> "[c]ompel any person cited, other than the judgment debtor, to deliver up any assets so discovered, to be applied in satisfaction of the judgment, in whole or in part, when those

assets are held under such circumstances that in an action by the judgment debtor he or she could recover them in specie or obtain a judgment for the proceeds or value thereof as for conversion or embezzlement. A judgment creditor may recover a corporate judgment debtor's property on behalf of the judgment debtor for use of the judgment creditor by filing an appropriate petition within the citation proceedings." *Id.* § 2-1402(c)(3).

Our objective when interpreting a statute is to give effect to the legislative intent behind the statute based on its plain language. *Hayward v. Scorte*, 2020 IL App (1st) 190476, ¶ 20. Lockwood argues that the final sentence of subsection (c)(3), which the legislature added in 2008, supersedes *Pyshos* and authorizes the circuit court to pierce the veil in supplementary proceedings. Pub. Act 95-0661 (eff. Jan. 1, 2008) (amending 735 ILCS 5/2-1402).

¶ 16    The language of this 2008 amendment refers to the recovery of a corporate judgment debtor's "property" on behalf of the judgment debtor. *Id.* An action to pierce the corporate veil does not serve to recover property. Compare, *e.g.*, *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023, ¶ 45 (explaining that piercing the corporate veil "permits aggrieved plaintiffs to *attach liability*" to corporate officers and directors (Emphasis added.)) with *Hayward*, 2020 IL App (1st) 190476, ¶ 27 (explaining that subsection (c)(3) and other subsections "concern certain identifiable assets" and "do not authorize the court to enter the full underlying judgment against third parties" unless the court finds that third parties hold a judgment debtor's assets under specific conditions). Piercing apportions personal liability "independent of the judgment debtor's assets." *Cf. Kennedy v. Four Boys Lab. Serv., Inc.*, 279 Ill. App. 3d 361, 366 (1996) (holding that a violation of the Business Corporation Act that was "not concerned with the actual assets of the judgment debtor" was not properly brought within supplementary proceedings, in contrast to a claim for

fraudulent transfer which "imposes liability based on the value of the transferred assets"). There is an obvious tension between the language of the statute and permitting a veil-piercing claim to be litigated in a supplementary proceeding.

¶ 17    At oral argument, Lockwood theorized that in response to *Semande v. Estes*, the legislature amended the statute in 2008 to clarify that a judgment creditor can recover assets on the corporation's behalf even if the corporation itself could not recover those assets. *Semande v. Estes*, 374 Ill. App. 3d 468, 472 (2007) (deciding as a matter of first impression that a director of a corporation could not pierce the corporation's veil). Even if the amendment did so, Lockwood ignores that the statute allows a judgment creditor to recover *property* on the debtor's behalf, not extend the debtor's liability to third parties. Further, the Third District decided *Estes* on June 29, 2007. *Semande v. Estes*, 374 Ill. App. 3d. By that time, the state senate and house of representatives had already passed the amendment. 95th Ill. Gen. Assem., Senate Proceedings, May 10, 2007, at 34-35 (passing the amendment); 95th Ill. Gen. Assem., House Proceedings, May 31, 2007, at 267 (same).

¶ 18    We are to construe the supplementary proceedings statute liberally, but we cannot rewrite it. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 568 (2002); *Business Service Bureau, Inc. v. Martin*, 306 Ill. App. 3d 907, 910-11 (1999). While Lockwood has faced a challenge in enforcing the underlying judgment, an action to pierce the corporate veil cannot be reconciled with the plain language of the supplementary proceedings subsection on which Lockwood relies or with the existing case law. *Pyshos*, 258 Ill. App. 3d at 623-25; *Lange*, 232 Ill. App. 3d at 1081-82; *Miner*, 342 Ill. App. 3d at 415.

¶ 19    Lockwood relies on *O'Connell v. Pharmaco* and a subsequent case to argue that if a third party possesses assets of the judgment debtor, a court may pierce the corporate veil. *O'Connell v. Pharmaco, Inc.*, 143 Ill. App. 3d 1061 (1986); *Golfwood Square LLC v. O'Malley*, 2018 IL App (1st) 172220-U (citing *O'Connell v. Pharmaco*, 143 Ill. App. 3d 1061 (1986)). However, both cases are distinguishable because they did not involve veil-piercing but instead dealt with a third party's possession of property of the judgment debtor. *O'Connell*, 143 Ill. App. 3d at 1070-71 (determining ownership of specific pool of assets in possession of corporate officer on breach of duty theory); *Golfwood Square*, 2018 IL App (1st) 172220-U, ¶¶ 6-12, 23-25 (determining ownership of specific pool of assets in possession of the owner of a parent LLC by examining an interlocking operation agreement and charging order).

¶ 20    In *O'Connell v. Pharmaco*, a corporate officer diverted settlement proceeds from a corporate judgment debtor through a series of transactions that the circuit court determined breached the officer's duties to the corporation and its creditors. *O'Connell*, 143 Ill. App. 3d at 1070-71. The proceeds diverted to the officer through those transactions were therefore held to be assets of the corporation, *i.e.*, the judgment debtor, in the possession of a third party, the corporate officer, and were properly ordered turned over as part of supplementary proceedings. *Id.* at 1071. *O'Connell* was not a piercing action—the circuit court had before it identifiable assets, and the judgment entered against the corporate officer in the supplementary proceeding correlated with assets diverted from the corporation.

¶ 21    More recently, in *Golfwood Square LLC v. O'Malley*, this court examined an interlocking operation agreement and charging order as they related to proceeds from the sale of real estate. 2018 IL App (1st) 172220-U. There, the judgment debtor owned 90% of an LLC, Sheffield, that

was the sole member of another LLC, 3 Squared. *Id.* ¶¶ 6-7. 3 Squared's operating agreement required that it dissolve when it sold its only asset, a condominium, with net proceeds going to its members. *Id.* at ¶¶ 6, 12. Sheffield, 3 Squared's only member, was subject to a charging order within the supplementary proceedings requiring Sheffield to pay the judgment debtor's distributions to the judgment creditor. *Id.* at ¶ 10. Thus, when 3 Squared sold the condominium, the net proceeds should have gone to Sheffield and then, in turn, to the judgment debtor. By retaining the proceeds, 3 Squared was holding assets of the judgment debtor which the circuit court properly ordered 3 Squared to turn over to the judgment creditor. *Id.* at ¶¶ 23-25, 29 (explaining that "[c]rucially, the [ ] turnover order [did] not hold [the judgment debtor] personally liable for a corporate debt, so it [did] not pierce the corporate veil").

¶ 22    These cases do not hold that veil-piercing is available in supplementary proceedings against third parties if they hold assets of the judgment debtor. Instead, each adheres to the principle articulated in *Pyshos*: with respect to third parties, the only relevant inquiry in a supplementary proceeding is whether that third party possesses assets of the judgment debtor. *Pyshos*, 258 Ill. App. 3d at 623.

¶ 23    Lockwood next contends that the judgment below may be affirmed on a basis as simple as asset tracing. She maintains that Professional Neurological Services improperly transferred assets to the doctors and that these transfers supported the circuit court's entry of judgment against them. The doctors suggest that this argument was not raised below, but Lockwood squarely presented the issue of improper transfers of assets before the circuit court. Her amended complaint alleged that the doctors "intentionally dissipated and diverted the assets of [Professional Neurological Services] for the benefit of themselves individually," and the circuit court based its decision in part

on the fact that the doctors "appear[ed] to have caused PNS to pay personal expenses." Further, an appellee can urge this court to affirm on any basis supported by the record. *Tomaso v. Plum Grove Bank*, 130 Ill. App. 3d 18, 25 (1985).

¶ 24    The wrinkle is that though Lockwood refers repeatedly to improper transfers, the trial below and the circuit court's judgment was framed as one of veil-piercing. The evidence adduced at trial indicated multiple transfers of assets by Professional Neurological Services to the doctors and entities they owned that the circuit court deemed "questionable." Lockwood does not articulate a legal standard under which we can assess each improper transfer, nor does she marshal the facts under specific legal authority. As demonstrated by *O'Connell* and *Golfwood Square*, the supplementary proceedings statute and our case law evinces multiple legal theories under which a judgment creditor might establish that third parties, including corporate officers, improperly obtained, transferred, or possessed assets that actually belong to a judgment debtor, each of which presents its own distinct legal issues. *O'Connell*, 143 Ill. App. 3d at 1070-71; *Golfwood Square*, 2018 IL App (1st) 172220-U, ¶¶ 6-12, 23-25; *Workforce Solutions. v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 40 (explaining that claims under the Uniform Fraudulent Transfer Act may be brought within supplementary proceedings); *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 879 (1998) (holding corporate officer liable for violating the restraining provision in a citation to discover assets served upon him); *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 652 (1993) (ordering payment to judgment debtor of funds used by corporate officers for personal expenses). On the record in this case, there is no basis on which we can assess the propriety of each transfer. *Workforce Solutions*, 2012 IL App (1st) 111410 (analyzing fraudulent transfer claims on a transfer-by-transfer basis).

¶ 25 For these reasons, we vacate the circuit court's judgment. Because Lockwood did allege that the doctors misappropriated corporate assets, we remand for further proceedings as to whether the doctors do in fact possess assets of the judgment debtor. *Pyshos*, 258 Ill. App. 3d at 625.

¶ 26          B. Attorney Fees in Supplementary Proceedings under City Ordinance

¶ 27 In 2011, the circuit court affirmed the Commission's award and entered a judgment against Professional Neurological Services that awarded Lockwood attorney fees and costs. After the veil-piercing trial, the circuit court awarded additional fees and costs to Lockwood for her enforcement efforts. In both instances, the circuit court acted pursuant to local anti-discrimination ordinances and Commission rules. Chicago Municipal Code § 2-120-480 *et seq.* (Commission enabling ordinance) (amended March 14, 2012); Chicago Municipal Code § 6-10-010 *et seq.* (Chicago Human Rights Ordinance) (amended March 14, 2012); Chicago Comm'n on Human Relations Regulation § 240.630(a) (2010).

¶ 28 The parties dispute whether the circuit court can grant attorney fees in supplementary proceedings to enforce a Commission award under the Chicago Human Rights Ordinance and the Commission's enabling ordinance. Chicago Municipal Code § 6-10-010 *et seq.*; Chicago Municipal Code § 2-120-510(l) (amended March 14, 2012). The doctors argue that a supplementary proceeding does not constitute substantive review of a Commission decision and therefore falls outside the language of the enabling ordinance. Lockwood contends that under civil rights fee-shifting provisions, a statutory grant of attorney fees has been interpreted to include fees incurred in enforcing a judgment. Though we are vacating the judgment holding the doctors personally liable, we reach the attorney fees issue because it could recur on remand.

¶ 29    Interpreting an ordinance presents a question of law which we review *de novo. People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008); *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 25. We focus on the plain language of the ordinance and construe it such that no word or paragraph is rendered meaningless. *Boaden v. Department of Law Enforcement*, 267 Ill. App. 3d 645, 651 (1994).

¶ 30    The Commission's enabling ordinance allows the award of attorney fees:

"(l) *** order such relief as may be appropriate under the circumstances determined in the hearing. Relief may include but is not limited to an order: *** to pay to the complainant all or a portion of the costs, including reasonable attorney fees, expert witness fees, witness fees and duplicating costs, incurred in pursuing the complaint before the Commission or at any stage of judicial review; to take such action as may be necessary to make the individual complainant whole, including, but not limited to, awards of interest on the complainant's actual damages and backpay from the date of the civil rights violation." Chicago Municipal Code § 2-120-510(l).

By allowing for attorney fees at "*any stage* of judicial review," the plain language of the ordinance permits the recovery of attorney fees in supplementary proceedings, which are predicated on that review and proceed under the same case number. *Id.* (Emphasis added.).

¶ 31    Our conclusion in this regard is consistent with the remedial purpose of the ordinance. In interpreting a federal civil rights statute, the Seventh Circuit reached the same conclusion. In *Free v. Briody*, 793 F.2d 807, 808 (7th Cir. 1986), the Seventh Circuit analyzed the Employee Retirement Income Security Act to determine whether a plaintiff could recover fees incurred in enforcing a judgment obtained under the Act. The court reasoned that "entry of judgment is not

the end of the litigation; *** it may not even be the beginning of the end." *Id.* at 809. As a result, "[i]t would make no more sense to deny attorney[ ] fees for efforts to collect a judgment than it would to deny them for efforts to defend a judgment on appeal." *Id.*

¶ 32     Here, the compensatory goals of the ordinance would be "diluted if fees were denied to plaintiffs required to contest substantial efforts to resist or obstruct the collection of civil rights judgments," (Internal quotation marks omitted.) leaving them with "a paper judgment not negotiable into cash except by undertaking burdensome and uncompensated litigation." *Balark v. Curtin*, 655 F.2d 798, 803 (7th Cir. 1981); see Chicago Municipal Code § 2-120-510(l) (empowering the Commission to take "such action as may be necessary to make the individual complainant whole").

¶ 33                  C. Effect of Improper Service of Petition for Revival

¶ 34     Lockwood obtained the underlying judgment against the doctors on March 10, 2011. Under the Code of Civil Procedure, a judgment becomes dormant seven years from entry, 735 ILCS 5/12-108 (West 2020), but may be revived by petition at any point within 20 years of entry. 735 ILCS 5/2-1602 (West 2020). Lockwood's judgment expired in 2018, and after the doctors raised the issue in 2020, Lockwood petitioned to revive it. The circuit court granted the petition.

¶ 35     The doctors argue that due to defects in service of the petition upon Professional Neurological Services, the circuit court lacked jurisdiction to revive the judgment. We review whether a circuit court obtained personal jurisdiction over a party *de novo. BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17 (explaining that "personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction").

¶ 36    Section 5/2-1602 governs petitions for revival and requires service of the petition under Illinois Supreme Court Rule 106, which incorporates the service methods in Rule 105. 735 ILCS 5/2-1602; see also 735 ILCS 5/2-1601 (West 2020); Ill. S. Ct. R. 105 (eff. Jan. 1, 2018), 106 (eff. Aug. 1, 1985). Rule 105 allows that notice may be provided "(1) by service of summons, (2) by certified or registered mail, or (3) by publication." *Department of Public Aid ex rel. McGinnis v. McGinnis*, 268 Ill. App. 3d 123, 129 (1994). The purpose of service under Rules 105 and 106 is "to notify a party of pending litigation in order to secure his presence." *People v. Saterfield*, 2015 IL App (1st) 132355, ¶ 15. "In construing the sufficiency of the notice, our focus is not on whether the notice is formally and technically correct but, rather, on whether the object and intent of the law were substantially attained." *Id.*

¶ 37    The doctors' primary objection to service of the petition is that Lockwood sent the petition to the corporation's attorney rather than the corporation itself as required by Rule 105. *Armis Construction Co., Inc. v. Cosmopolitan National Bank*, 134 Ill. App. 3d 177, 182 (1st Dist. 1985) (explaining that Rule 105 requires personal service upon the party). However, notice to the party "is required [under Rule 105] *** because, after judgment, it cannot be assumed that the same attorney continues to represent him." *Public Taxi Service, Inc. v. Ayrton*, 15 Ill. App. 3d 706, 712 (1973). Where an attorney's postjudgment actions—"such as attempting to obtain satisfaction of the judgment—indicate that he is still the party's attorney, then there is no logical reason why the party should not be notified through him." *Id.* ("An attorney who has filed an appearance is chargeable with notice of all orders [affecting] pending causes; notices served upon him are notices served upon his client."). This rule represents a narrow equitable exception to the service requirements of Rule 105 where a party's attorney is "in court representing his client in a matter

ancillary to the original judgment." (Internal quotation marks omitted.) *Armis*, 134 Ill. App. 3d at 181.

¶ 38    The same attorney appeared and litigated the supplementary proceedings on behalf of Professional Neurological Services and the doctors. That attorney was before the circuit court actively litigating an ancillary matter, *i.e.*, supplementary proceedings, when Lockwood sent him her petition, bringing this case within the exception. *Id.* The doctors argue that the exception does not apply because although counsel was actively litigating within supplementary proceedings on the doctors' behalf, he was no longer acting on behalf of the *corporation* when Lockwood sought revival.

¶ 39    *Panos Trading LLC v. Forrer* is instructive. 2023 IL App (1st) 220451. There, a judgment creditor pursued supplementary proceedings against the manager of an LLC on a fraudulent transfer theory. *Id.* ¶ 1. The LLC was the judgment debtor. *Id.* The judgment creditor petitioned to revive the judgment within the supplementary proceedings. *Id.* ¶ 25. On appeal, the manager argued that because the judgment creditor did not properly serve the LLC, the judgment was never properly revived. *Id.* ¶ 37. This court held that where the LLC's "manager and sole class A member" was clearly aware of the "dormancy (which he raised) and the revival (which he challenged)," defects in service of the petition to revive did not create any surprise on the part of the LLC and could therefore be excused. *Id.*

¶ 40    Here, the doctors, the three sole shareholders of a defunct corporation, seek to invalidate revival of a judgment by attacking service upon the corporation. They were "undeniably aware" of the dormancy, which they raised in a motion to terminate the supplementary proceedings before the circuit court, and the revival, which they challenged in briefing following that motion to

terminate. *Id*. Where Professional Neurological Services' shareholders and officers appeared and contested the petition to revive, any technical defect in service on the corporation is without consequence. *Saterfield*, 2015 IL App (1st) 132355, ¶ 15. Therefore, the circuit court did not err in reviving the judgment against Professional Neurological Services.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court on Lockwood's veil-piercing claim and attendant award of attorney fees is vacated, and the case remanded for further proceedings consistent with this opinion. The circuit court's revival of Lockwood's judgment is affirmed.

¶ 43    Veil-piercing judgment vacated and cause remanded; the revival of judgment affirmed.

---

***Dena Lockwood v. Professional Neurological Services, Ltd., Dr. Malcolm Herzog, Dr. Matthew Garoufalis, Dr. Jerzy Szymanski, and Advanced Neurological Diagnostics, LLC,* 2025 IL App (1st) 231705**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10 CH 6667; the Hon. Pamela McLean Meyerson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellants:** | Robert H. Smeltzer, of Kilpatrick Townsend & Stockton, LLP, of Chicago, and Richard E. Steck, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorney for Appellee:** | Ruth I. Major, of the Law Offices of Ruth I. Major, P.C., of Chicago, for appellee. |

---